UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Duane Carlson,

                Plaintiff,

                                    Civ. No. 04-5027 (RHK/RLE)
                                    **MEMORANDUM OPINION**
                                    **AND ORDER**

v.

Arrowhead Concrete Works, Inc.,

                Defendant.

---

James H. Kaster and Jessica J. Clay, Nichols, Kaster & Anderson, PLLP, Minneapolis, Minnesota, for Plaintiff.

Lee A. Lastovich and Thomas R. Trachsel, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, Minnesota, for Defendant.

---

## Introduction

This case arises out of an employee's allegation that he was laid off and not recalled to work because he complained to his employer that his job was unsafe. Plaintiff Duane Carlson has sued Defendant Arrowhead Concrete Works, Inc. ("Arrowhead") alleging violations of two Minnesota anti-retaliation laws. Before the Court is Arrowhead's Motion to Dismiss. For the reasons set forth below, the Court will deny Arrowhead's Motion and, because subject matter jurisdiction is lacking, will remand the case to state court.

**Background**

In December 2002, Duane Carlson, a Minnesota resident, was hired by Arrowhead, a Minnesota corporation owned and operated by Gerry and James Carlson,[1] to operate a cement pump truck.  In early 2003, Duane received safety training from Schwing America, the manufacturer of the pump trucks.  In May 2003, Duane became concerned that two of the pump trucks used by Arrowhead were unsafe and believed that driving the trucks would violate the Occupational Safety and Health Act and other laws.  He raised his concerns with Gerry and James and requested that the trucks be inspected and repaired.  James stated that he would look into the issue, but nothing was done.

Throughout June and July of 2003, Duane asked Gerry and James to have the trucks inspected.  On one occasion that summer, Duane took one of the trucks to a mechanic to repair a crack on the boom.  The mechanic told Duane that numerous additional repairs were needed, but Gerry told Duane to bring the truck back without the additional repairs.

On August 26, 2003, Duane discovered structural cracks in the turret of one of the trucks and other cracks in the outrigger.  He also saw the main boom fall back when it was raised and saw that the boom's pins were worn.  These problems raised additional safety concerns.  For example, the problems with the boom and turret might cause the

---

[1] Plaintiff Duane Carlson is not related to Gerry and James Carlson.  For simplicity, the Court will refer to Plaintiff as "Duane" and to the Carlson brothers as "Gerry" and "James."

pump truck's arm to fall and the cracks in the outrigger might cause the truck to tip over. Duane told Gerry and James that the truck put lives in danger and needed to be repaired. James replied, "you should keep your mouth shut and do what you are told." (Compl. ¶ 17.)

On August 27, 2003, Duane spoke with Arrowhead's Safety Director and showed him the cracks in the pump truck's turret. The Safety Director agreed that there were safety issues and that the truck should not be driven.

On August 28, 2003, Duane gave Gerry and James a letter resigning from his pump truck position effective in two weeks, at which time he would exercise his seniority rights under his union's collective bargaining agreement and work in another position. However, Duane told Gerry that if the truck was inspected, he would continue to operate the truck. Gerry responded, "you don't get to dictate demands to me. I tell you what to do or you can get the hell out of here." (Compl. ¶ 20.)

After two weeks expired, on September 10, 2003, Duane exercised his rights under the collective bargaining agreement and stepped down from his pump truck position to work on a mixer truck. That same day, James told Duane to start the pump truck for a job, but Duane refused because the truck was unsafe. James replied, "Listen you little cocksucker, get in that truck right fucking now and get it ready. I am sick of your whining." (Compl. ¶ 22.) He further stated, "some fuckers are going down the road and getting laid off. You're going to be the first one you son of a bitch." (Id.) Duane

reported the incident to his union, but the union did not allow him to file a grievance. (Id. ¶ 23.)

In the fall of 2003, Duane was allowed to take one of the pump trucks in for an inspection. The mechanic inspecting the pump truck found it unsafe. When Duane told Gerry how much the repairs would cost, Gerry told him to bring the truck back without the repairs. Duane refused.

On November 6, 2003, Duane was laid off, along with six other employees. On June 4, 2004, Duane was told that he was not going to be called back to work, even though employees with less seniority were called back to work at Arrowhead and at other companies owned by Gerry and James. (Compl. ¶¶ 29-30.)

As alluded to above, Duane belonged to a union and the union had a collective bargaining agreement (the "Agreement") with Arrowhead. (See Compl. ¶¶ 16, 18, 21, 23; Trachsel Aff. Ex. 1 (Agreement).) Article 3 of the Agreement provides that "[n]o driver shall be required to drive a truck that does not comply with all state and city safety regulations." (See Compl. ¶ 16; Trachsel Aff. Ex. 1.) Article 15 contains provisions governing seniority, layoffs, bumping, and recall rights. (See Compl. ¶ 30; Trachsel Aff. Ex. 1.) Appended to the Agreement is a "Memorandum of Understanding," which provides that Arrowhead employees will be granted "first consideration" for hiring opportunities at two other commonly owned companies. (See Trachsel Aff. Ex. 1.) Finally, Article 13 contains a mandatory grievance-arbitration procedure. (Id.)

In November 2004, Duane sued Arrowhead in Minnesota state court alleging two causes of action. First, he alleges that Arrowhead violated Minnesota's Whistleblower Act, Minn. Stat. § 181.932, by laying him off and not recalling him in retaliation for reporting suspected violations of the law, objecting to the violations, and refusing to operate the pump trucks. (See Compl. ¶¶ 34-40 (Count I).) Second, he alleges that Arrowhead violated Minnesota's Occupational Safety and Health Act, Minn. Stat. § 182.654, by discriminating against him because he complained about the violation of the law, caused the pump trucks to be inspected, and refused to drive the pump trucks. (See id. ¶¶ 41-47 (Count II).)

Arrowhead removed the case to this Court on the sole ground that Duane's claims are completely preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Notice of Removal ¶ 3.) Its Motion to Dismiss followed.

**Standard of Review**

Under Rule 12(b)(6), all factual allegations must be accepted as true and every reasonable inference must be made in favor of the complainant. Fed. R. Civ. P. 12(b)(6); see Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and [destined] to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001) (citation omitted). A cause of action "should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002) (citations omitted). On a motion to dismiss, "[t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." In re K-tel Int'l Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (citations and internal quotations omitted).[2]

**Analysis**

The issue presented in this Motion is whether Duane's state law claims are completely preempted by section 301 of the Labor Management Relations Act ("LMRA"). Having removed the case on this basis, Arrowhead contends that Duane's claims are completely preempted by section 301 and, because Duane did not exhaust the Agreement's grievance-arbitration procedure as section 301 requires, the Complaint must be dismissed. (Mem. in Supp. at 2.) Duane responds that his state law claims are not completely preempted by section 301 and, because without complete preemption there is no subject matter jurisdiction, this case must be remanded to state court. (Mem. in Opp'n at 14-17.) As will be discussed below, because the Court determines that Duane's state

---

[2] Arrowhead's Motion to Dismiss is not converted to a summary judgment motion by its submission of the Agreement because the Agreement is "embraced by" the Complaint. In re K-tel Int'l Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002).

law claims are not completely preempted by section 301, this case will be remanded to state court.³

### A. Complete Preemption

The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law. Chapman v. Lab One, 390 F.3d 620, 624 (8th Cir. 2004). State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law. Id. Ordinarily, federal preemption is merely a defense to a plaintiff's state law claim, and it does not alter the jurisdiction of the federal court. Id. at 625.

The doctrine of "complete preemption," however, establishes more than a defense to a state law claim. Id. On limited occasions, the Supreme Court has concluded that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts' an ordinary state . . . law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)).

---

³ Arrowhead also argues that the Complaint must be dismissed under the preemption doctrine originated in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959). (Mem. in Supp. at 1-2.) However, the Court need not address this alternative argument because if Duane's claims are not completely preempted under section 301, as alleged in the Notice of Removal, the Court lacks subject matter jurisdiction and must remand the case to state court. Both parties conceded this point at the motion hearing. (Audio Tape: Oral Argument 5/24/05.)

When an area of state law has been "completely preempted," then any claim "purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. (quoting Caterpillar, 482 U.S. at 393). Accordingly, "complete preemption" of a state law cause of action provides a basis for removal of an action to federal court. Id.

### B.   Section 301 of the LMRA

The doctrine of "complete preemption" has been applied in cases arising under section 301 of the LMRA. Chapman, 390 F.3d at 629. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 preempts state law claims "where the resolution of the state law claim 'substantially depends' on the interpretation of terms or provisions of a collective bargaining agreement." Hanks v. General Motors Corp., 906 F.2d 341, 343 (8th Cir. 1990) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)). If the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," that claim is preempted. Id. (citing Lueck, 471 U.S. at 213). However, "[i]f the claim is not 'inextricably intertwined' with a collective bargaining agreement, that claim is independent and is not preempted." Id. (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)).

8

It follows that "a state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption." Id. (citing Lingle, 486 U.S. at 407-08); see Luecke v. Schnucks Markets, Inc., 85 F.3d 356, 359 (8th Cir. 1996). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (citing Lingle, 486 U.S. at 413 n.12). Said differently, "[m]ere reference to a collective bargaining agreement is not sufficient to result in preemption." Thomas v. Union Pacific R.R. Co., 308 F.3d 891, 893 (8th Cir. 2002) (discussing preemption under the Railway Labor Act, which follows "virtually identical" standards as section 301 preemption, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260 (1994)).

### C. Duane's Claims

As noted above, Duane makes two claims. First, he alleges that Arrowhead violated Minnesota's Whistleblower Act, Minn. Stat. § 181.932, by laying him off and not recalling him in retaliation for reporting suspected violations of the law, objecting to the violations, and refusing to operate the pump trucks.[4] (See Compl. ¶¶ 34-40 (Count I).)

---

[4] Section 181.932 provides, in part:
Subdivision 1. **Prohibited action.** An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
    (a) the employee, or a person acting on behalf of an employee, in

Second, Duane alleges that Arrowhead violated Minnesota's Occupational Safety and Health Act ("MOSHA"), Minn. Stat. § 182.654, by discriminating against him because he complained about the violation of the law, caused the pump trucks to be inspected, and refused to drive the pump trucks.[5]  (See id. ¶¶ 41-47 (Count II).)

Retaliation claims under the Whistleblower Act and MOSHA are analyzed under the McDonnell-Douglas three-part burden shifting test.  See Brevik v. Kite Painting, Inc.,

---

> good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official; . . . . [or]
>     (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason. . . .

Minn. Stat. § 181.932, subd. 1.

> [5] Section 182.654 provides, in part:
> Subd. 9.  **Discriminatory acts prohibited.**  No employee shall be discharged or in any way discriminated against because such employee has filed any complaint or instituted or caused to be instituted any proceeding or inspection under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of the employee or others of any right afforded by this chapter. . . .
> Subd. 11.  **Refusal to work under dangerous conditions.**  An employee acting in good faith has the right to refuse to work under conditions which the employee reasonably believes present an imminent danger of death or serious physical harm to the employee. . . .  An employer may not discriminate against an employee for a good faith refusal to perform assigned tasks if the employee has requested that the employer correct the hazardous conditions but the conditions remain uncorrected. . . .

Minn. Stat. § 182.654, subds. 9, 11.

416 N.W.2d 714, 717 (Minn. 1987) (recognizing retaliation claims under MOSHA); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (applying McDonnell-Douglas to retaliation claims); Rothmeier v. Investment Advisers, Inc., 556 N.W.2d 590, 592-93 (Minn. Ct. App. 1997) (applying McDonnell-Douglas test to Whistleblower Act retaliation claim). To establish a prima facie claim of retaliation, Duane will have to show: (1) he engaged in protected conduct; (2) an adverse employment action was taken by Arrowhead; and (3) a causal connection between the two. See Hubbard, 330 N.W.2d at 444. Arrowhead must then come forward with a legitimate non-discriminatory reason for the adverse employment action. See id. at 445. Finally, the burden will shift to Duane to show that Arrowhead's reason is pretextual or "to otherwise carr[y] his overall burden of persuasion." Id.

### D. Duane's Claims Are Not Completely Preempted

Arrowhead contends that Duane's claims are completely preempted because Article 15 of the Agreement must be interpreted to determine whether a causal connection exists between his protected activity and his layoff and not being recalled. (Mem. in Supp. at 2, 15-20.) Article 15 provides, in part:

> In reducing the personnel because of lack of work, the last man hired shall be the first laid off, and in calling men back to work, the last man laid off shall be the first man returned to work, and is further defined as the principle that in cases of filling vacancies for new jobs, seniority shall prevail herein.

(Trachsel Aff. Ex. 1.) Arrowhead asserts that Duane's entitlement to continued employment is "totally dependent" upon his seniority rights, which do not exist "but for

11

the collective bargaining agreement." (Mem. in Supp. at 16.) Duane responds that his claims do not require interpretation of the Agreement. (Mem. in Opp'n at 14.) Rather, relying on the Supreme Court's decision in Lingle and its progeny, he contends that his claims focus on his conduct and Arrowhead's conduct and motivation in laying him off and not recalling him. (Id. at 15.)

In Lingle, the Supreme Court held that a unionized employee's state law action based on Illinois' tort of retaliatory discharge was not preempted by section 301. See Lingle, 486 U.S. at 401, 407. In analyzing whether preemption was appropriate, the Court considered the elements of retaliatory discharge under Illinois law:

> [T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the [Workers' Compensation Act] or to interfere with his exercise of those rights.

Id. at 407 (citations and internal quotations omitted). The employer argued that the employee's retaliation claim was preempted by section 301 because it was inextricably intertwined with a provision in the collective bargaining agreement prohibiting discharge without "just cause." See id. at 402. The Supreme Court rejected this argument, finding that the retaliatory discharge claim raised "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." Id. at 407. Thus, the Supreme Court held that "the state law remedy . . . is 'independent' of

the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." Id. (footnote omitted); see Rosen v. Transx Ltd., 816 F. Supp. 1364, 1370-71 (D. Minn. 1993); Brown v. Holiday Stationstores, Inc., 723 F. Supp. 396, 401-02 (D. Minn. 1989).

The Court finds that Duane's Whistleblower Act and MOSHA claims are not preempted by section 301. The Supreme Court's analysis in Lingle is instructive. Establishing a claim for retaliation under either the Whistleblower Act or MOSHA only requires an analysis of factual questions pertaining to Duane's conduct and Arrowhead's conduct and motivation and requires no analysis of any provisions or terms of the Agreement. See Lingle, 486 U.S. at 407; Thomas, 308 F.3d at 893; Meyer v. Schnucks Markets, Inc., 163 F.3d 1046, 1051 (8th Cir. 1998); Rosen, 816 F. Supp. at 1371. The possibility that Duane could have raised claims under the Agreement, but chose not to do so in his Complaint, does not compel a finding that preemption is warranted. See Caterpillar, 482 U.S. at 395; Meyer, 163 F.3d at 1051; Hanks, 906 F.2d at 343, 345; Rosen, 816 F. Supp. at 1371. Likewise, that the Agreement may have to be referred to in this case does not compel a finding of preemption. See Livadas, 512 U.S. at 124; Thomas, 308 F.3d at 893.

Furthermore, this Court has held that claims made under the Whistleblower Act and MOSHA are not preempted by section 301, see Wheale v. Cloquet Cmty. Mem'l Hosp., 2003 WL 21667172, at *1-2 (D. Minn. July 15, 2003) (Kyle, J.) (Whistleblower

13

Act); Gonzales v. West End Iron and Metal Corp., 915 F. Supp. 1031, 1038 (D. Minn. 1996) (Doty, J.) (MOSHA); Rosen, 816 F. Supp. at 1370-71 (Doty, J.) (Whistleblower Act), as has the Minnesota Supreme Court, see Brevik, 416 N.W.2d at 717-19 (MOSHA). Similarly, the Eighth Circuit has held that retaliation claims under a Missouri anti-retaliation statute are not preempted by section 301. See Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1240, 1244-45 (8th Cir. 1995). In sum, preemption is unwarranted in this case because, as the Supreme Court has stated, "it would be inconsistent with congressional intent under [section 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Lueck, 471 U.S. at 212 (footnote omitted); see Humphrey, 58 F.3d at 1244.

    Arrowhead attempts to distinguish Lingle, Rosen, Wheale, and Brevik on the ground that in each case the plaintiff was discharged, rather than laid off and not recalled, as is the case with Duane. (See Mem. in Supp. at 19-20; Reply Mem. in Supp. at 10-11.) The Court finds that this is a distinction without a difference. None of these cases turned on whether the plaintiff was discharged rather than laid off; it just so happened that discharge was the adverse employment action taken by the employer. Subsequent cases have applied Lingle's reasoning in circumstances where the plaintiff was not discharged. See, e.g., Meyer, 163 F.3d at 1051 (finding non-discharged plaintiff's state law claims not preempted under section 301); Luecke, 85 F.3d at 358, 359-60 (same).

    Arrowhead also attempts to distinguish Lingle and its progeny on the basis that the employer in Lingle relied on a "just cause" provision in the collective bargaining

14

agreement, while Arrowhead relies on a seniority, bumping, and layoff provision. (See Mem. in Supp. at 19-20; Reply Mem. in Supp. at 10-11.) However, nothing in Lingle signifies that its reasoning is limited to situations involving "just cause" provisions of a collective bargaining agreement. On the contrary, several courts have relied on Lingle in cases not involving such provisions. See, e.g., Hanks, 906 F.2d at 342 (involving grievance provision); Rosen, 816 F. Supp. at 1370-71 (same).

Furthermore, Arrowhead's reliance on two unpublished district court cases from outside of this District—Vines v. Sloss Indus. Corp., 1996 WL 806682 (N.D. Ala. Nov. 25, 1996) and Doran v. Thermatex Corp., 1989 WL 163700 (N.D. Ohio July 31, 1989)—is misplaced. (Reply Mem. in Supp. at 11.) In Vines, the court construed the plaintiff's claim, in light of "the peculiar nature of th[e] case," as asserting "the right, under the [collective bargaining agreement], to return to work." Id. at *4. In Doran, the court construed the plaintiff's cause of action as "based upon the claim that the employer engaged in an erroneous interpretation of the collective bargaining agreement." Id. at *4. However, no such claims are made by Duane in this case. As this Court reads his Complaint, Duane is not asserting the right to return to work under the Agreement, nor is he asserting that Arrowhead has erroneously interpreted the Agreement; rather, he asserts that he was laid off and not recalled in violation of Minnesota law.

**E.     Remand**

Duane argues that because his claims are not completely preempted, this Court lacks subject matter jurisdiction over the case. (Mem. in Opp'n at 16-17.) The Court

agrees. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Arrowhead specifically removed this matter pursuant to section 301 and the "complete preemption" doctrine. (Notice of Remand ¶ 3.) But without recourse to section 301, this Court lacks subject matter jurisdiction to resolve the matter. Accordingly, the Court remands this matter under 28 U.S.C. § 1447(c) to state court. See Wheale, 2003 WL 21667172, at *2; Rosen, 816 F. Supp. at 1372; see also Meyer, 163 F.3d at 1052 (remanding case after determining that state law claims were not preempted by section 301); Luecke, 85 F.3d at 362 (same); Humphrey, 58 F.3d at 1247 (same).

## Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. 3) is **DENIED**; and

2. Plaintiff's Complaint is **REMANDED** to the St. Louis County District Court pursuant to 28 U.S.C. § 1447(c); the Clerk of this Court shall mail to the Clerk of the St. Louis County District Court a certified copy of this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: June 24, 2005         s/Richard H Kyle
                             RICHARD H. KYLE
                             United States District Court